396 FLATBUSH AVENUE EXTENSION REALTY CORPORATION, Appellant, v. THE CITY OF NEW YORK et al., Respondents, and BARNEY ZIRINSKY et al., Appellants, Impleaded with Another.

(Argued March 8, 1934; decided April 17, 1934.)

*Almet R. Latson, Robert Abelow* and *William T. Condon* for appellants. The deed from the city conveyed to the purchaser a fee to the whole parcel subject only to an easement in the city. (*Matter of City of New York* [*Tunnel St.*], 160 App. Div. 29; 212 N. Y. 547; *City Club of Auburn* v. *McGeer*, 198 N. Y. 609; *Blackman* v. *Striker*, 142 N. Y. 555; *Auburn & Syracuse Electric R. R. Co.* v. *Headley*, 119 Misc. Rep. 94; 206 App. Div. 653.) The rights of the city under the easement reserved or excepted in the deed, are limited to an enjoyment of the easement and include nothing except what is essential to such enjoyment and do not prevent the use and occupancy by the plaintiff of any part of the servient tenement not

actually used by the city in the enjoyment of its easement so long as the covenants of limitation of use contained in the deed are complied with. (*Grafton* v. *Moir*, 130 N. Y. 465; *Herman* v. *Roberts*, 119 N. Y. 37; *Dexter* v. *Beard*, 130 N. Y. 549.) If the nature of the easement reserved by the city and the rights of the parties thereunder be not entirely clear from the deed, then the surrounding circumstances and the contemporaneous acts of the parties must be examined. The rights of the plaintiff depend upon the intent of the parties. (*Baird* v. *Erie R. R. Co.*, 210 N. Y. 225; *Elk Horn Coal Corp.* v. *Hackworth*, 61 Fed. Rep. [2d] 304.)

*Paul Windels*, Corporation Counsel (*Charles Blandy, Trabue Carswell* and *Louis Cohen* of counsel), *George D. Yeomans* and *George H. Stover* for respondents. By the conveyance from the city to plaintiff's predecessor no right was given to the grantee and her assigns to occupy and use that part of the area retained by the city. (*Las-Daub Realty Corp.* v. *Fain*, 214 App. Div. 8; *Langdon* v. *Mayor*, 93 N. Y. 129; *Newport* v. *Hatton*, 207 Cal. 515; *Peck* v. *McClelland*, 247 Mich. 369; *Roby* v. *N. Y. C. & H. R. R. R. Co.*, 142 N. Y. 176; *Long Island R. R. Co.* v. *Mulry*, 212 N. Y. 108; *Kip* v. *N. Y. C. & H. R. R. R. Co.*, 140 Misc. Rep. 62; 236 App. Div. 654; *Miner* v. *N. Y. C. & H. R. R. R. Co.*, 123 N. Y. 242; *Hudson & Manhattan R. R. Co.* v. *Wendel*, 193 N. Y. 166.) The alleged facts and circumstances surrounding the transaction cannot show that by the language of the deed it was intended to grant to plaintiff's predecessor the right to use the surface of the area in question. (*Ford* v. *Joyce*, 78 N. Y. 618; *Southard* v. *Curley*, 134 N. Y. 148; *Christopher St. R. Co.* v. *23d St. R. Co.*, 149 N. Y. 51; *Susquehanna S. S. Co.* v. *Anderson*, 239 N. Y. 285; *Thomas* v. *Bartow*, 48 N. Y. 193; *Grymes* v. *Sanders*, 93 U. S. 55; *Curtis* v. *Albee*, 167 N. Y. 360; *Kaufman* v. *Wade*, 206 App. Div. 630; *Whittemore* v. *Farrington*, 76 N. Y. 452; *Stettheimer* v. *Killip*, 75 N. Y.

282; *Schoonmaker* v. *Hoyt,* 148 N. Y. 425; *Salomon* v. *North British & M. Ins. Co.,* 215 N. Y. 214; *Metzger* v. *Ætna Ins. Co.,* 227 N. Y. 411; *154 W. 14th St. Co.* v. *Schulte, Inc.,* 121 Misc. Rep. 853; 210 App. Div. 851; *Silver Fox Co.* v. *New York Indemnity Co.,* 125 Misc. Rep. 430.)

CRANE, J. The city of New York acquired in fee for rapid transit railroad purposes pursuant to the authority conferred by the Rapid Transit Act (Laws of 1891, ch. 4), the triangular plot of land situated on the westerly side of Flatbush Avenue Extension distant eight feet eleven inches southerly from the southerly side of DeKalb avenue, having the dimensions of sixty-four feet one and one-half inches along Flatbush Avenue Extension and forty-seven feet eleven and three-quarter inches on the southerly side and forty-two feet six and one-half inches on the northerly side.

Upon the construction of the subway in Flatbush Avenue Extension an official map or plan was prepared and signed by the Transit Construction Commissioner, dated October 1, 1919, for the purpose of the sale, under authority of the Rapid Transit Act, of property not retained for rapid transit purposes. This plan shows easement areas to be retained aggregating 828 square feet out of the total area of the plot of 1,021 square feet. The easement area indicated as part 1 contains 291 square feet and extends upward to a plane ten feet above the elevation of the curb, as shown on the cross section at the lower left-hand corner of the map. This map, from the time of its preparation, was an official record of the Transit Construction Commissioner for the purpose of showing what was to be resold by the city and what was to be retained for rapid transit purposes.

Thereafter, application was made by the Transit Construction Commissioner to the Commissioners of the Sinking Fund of the city of New York, as required by the

Rapid Transit Act, for authority for the resale, the property to be sold being described fully in said application. This application refers to the resale map above mentioned and describes the property which it was intended to sell, as indicated on said map, and as subsequently contained in the deed which was delivered to plaintiff's predecessor.

The property above described is in the form of a triangle. The entrance to the subway is on Flatbush avenue. As you enter you turn to the left and go down a flight of stairs, then left again onto the subway platform which is underneath the avenue. All of this triangle was not to be used and was not in use at the time of the sale. The diagrams in evidence show that the entrance, stairway and platform were the easements in actual use. Any one going to the place would see these structures as part of the subway. Not so the rest of the triangle. This the city desired and proposed to sell together with the right to use the space over the subway above a certain height. So we come to the descriptions, the auction sale and the deed. All is supposed to have been done in good faith and we do not understand the city or the Commission as repudiating any of the acts of its agents or representatives. We may say right here, before going further, that the piece of property here in dispute is north of the subway station on Flatbush avenue, and about twenty-two square feet on the avenue. It also is a triangle. At the time of the sale it was rented out for a news stand; it was not used as part of or in connection with the subway or the easement for a subway. What did the city sell and what did it intend to sell?

In the terms of sale it is stated as to plot IV, which includes the property in question, "Ample area for high-grade stands is permitted at the street level * * * The principal value of this plot is for stands * * *. Nearly a year ago this office received an offer of $3,600 per annum net ground rent." Again it is stated, " The properties will be sold in fee simple free and clear of all

cncumbrances, except certain permanent and perpetual easements to be reserved and retained for the maintenance and operation in perpetuity of the structures of the rapid *transit subway railroads as they now exist free of interference or right of interference.*" " In the case of Plot IV the subway structures may be altered with respect to the location of the present entrance facilities, providing such entrance facilities are not reduced in capacity or their safety impaired, and provided the approval of the Chief Engineer is secured as aforesaid." This right or privilege was assured to the purchaser.

The instructions given by the Commission to the auctioneer to be read prior to the sale were these: " Those of you who have studied the detailed maps of the parcels to be sold, in the office of the Transit Commissioner or its predecessor, the Transit Construction Commissioner, will please note that the easement lines shown on such detailed maps do not always exactly follow the contours of the actual subway structures, but the easements as delimited on such drawings will not prevent the purchaser from utilizing any parts of the easement areas not actually occupied by the subway or structure or any of its supports, providing the subway or structure or any of its supports are not interfered with and the utility, stability and safety of the same are not impaired thereby."

" With regard to Plot IV — The news stands which you may have observed to be in large part on the sidewalk are there by virtue of a license issued by the Bureau of Licenses. No such license, however, can be given without the consent of the abutting owner, and the purchaser of this property will have the right as owner to give consent for the issuance of the requisite license. For this consent the owner can of course charge an adequate rental."

From these instructions any one would gather that the actual structures were the easements, or else that any part of the easement areas not actually occupied by the

structures could be utilized by the purchaser for rental purposes.

The deed for which the plaintiff's predecessor in title paid $49,300 recited: " Whereas, said real property so acquired by the city, except the permanent and perpetual easement and right-of-way therein, hereinafter described, has become unnecessary for rapid transit railroad purposes * * *. Now, therefore, this indenture witnesseth, That the city, in consideration of the premises and of the said sum of Forty-nine thousand three hundred dollars * * * does hereby grant and release unto the said party of the second part, her successors and assigns forever, subject to said easement and right-of-way therein, including the covenants and restrictions hereinafter expressed, all that certain plot," etc., describing all of the large triangle including the existing structures, " together with the appurtenances and all the estates, right, title and interest of the city in and to said premises, except said permanent and perpetual easement and right-of-way hereby reserved and retained."

Here is a conveyance in fee subject only to the easements. Are these easements restricted to the actual structures existing or may these be enlarged and extended? What are these easements? To determine this is to settle the case. The deed specifies these easements. Part 1 alone need be considered. " Flat portion having a horizontal area of two hundred and ninety-one (291) square feet." It is conceded by the plaintiff that this area takes in the triangle (smaller triangle) here in dispute. That is, the twenty-two square feet to the north of the subway entrance used for a news stand, are within this 291 square feet area. Only part of the area, however, is actually used for railroad or subway purposes. Exhibit 1-A, so much relied on by the respondent, shows this area as including the piece which the plaintiff here seeks to obtain. This exhibit is the map made and filed by the Transit Commission for the purpose of this sale. The

drawing designates part 1 as 291 square feet. However, the drawing also shows an elevation of the existing structure which excludes the property in dispute. Can we do better than give to this deed the construction placed upon it by the parties? The actual structures constituted the easements used for transit purposes; the remaining portion of the 291 square feet not so actually used was conveyed to the grantee in fee subject to an easement not then needed or used, and, until actually occupied by the railroad the grantee could utilize it for his own purposes. This is the representation made to the proposed purchasers at the auction and is the way the parties treated the grant thereafter for ten years.

The news stand existing on this unused portion of the 291 square feet was not a railroad easement and is not claimed to be. Renting this unused and unnecessary property was not the easement subject to which the property was sold. When the grantee took title in fee he took all rights of ownership in this 291 square feet except as to such portion actually used for subway purposes or which thereafter might become necessary for such use. Until that time arrived he was entitled to possession and to the rents and profits derived from its occupation.

The deed is dated July 19, 1921; the sale took place April 28, 1921. On April 30, 1921, the secretary to the Transit Commission wrote to the lessee of the twenty-two-foot frontage on Flatbush avenue (the property in dispute):

" Mr. FRANK I. BAKST,
        " 319 Pearl Street,
                " Brooklyn, N. Y.

" Dear Sir: As you may be aware the property of the City of New York, under the jurisdiction of this Commission, located on the westerly side of Flatbush Avenue Extension, 8' 11" south of DeKalb Avenue, Borough of Brooklyn, which you in part occupy, was sold at public

auction on the 28th instant to Mr. B. Zirinsky of 392 Bushwick Avenue, Brooklyn.

" In ordinary course in accordance with the Terms of Sale, title to this property would pass to Mr. Zirinsky on June 28, 1921. Therefore, you are advised that the rental agreement, under which you occupy a portion of these premises, will be terminated as of that date unless you are otherwise notified from this office or unless you make a separate arrangement with Mr. Zirinsky.

" Very truly yours,

" JAMES B. WALKER,

" Secretary."

To the husband of the purchaser the same secretary wrote July 21, 1921, as follows:

" Dear Sir: As requested by you yesterday after the closing of title to the property on the westerly side of Flatbush Avenue Extension south of DeKalb Avenue, Borough of Brooklyn, I am sending you herewith copies of papers pertaining to the temporary tenancies existing on the property previous to your taking title. You will note that Frank I. Bakst has paid rental up to and including July 15, 1921. We have this day written him requesting that he pay us rental up to and including July 19, 1921, as Sarah Zirinsky had taken title on July 20, 1921.

" Mr. George Lappos, the other tenant, paid rental up to July 1, 1921, and we have this day requested from him the payment of rental for the first 19 days of July, 1921, He was likewise advised that title was passed to Sarah Zirinsky on July 20, 1921. I do not send you a copy of the last receipt sent George Lappos for the reason that the receipt is part of another matter which may be confusing to your record and which certainly does not pertain to this property.   Very truly yours,

" JAMES B. WALKER,

" Secretary."

And again on July 21, 1921, the tenant was notified by the secretary as follows:

" Mr. Frank I. Bakst,
 " 319 Pearl Street,
   " Brooklyn, N. Y.

" Dear Sir: Referring to our notice to you of April 30, 1921, to vacate the premises on the westerly side of Flatbush Avenue Extension south of DeKalb Avenue:

" Please be advised that title to this property was passed from the City of New York to Sarah Zirinsky on July 20, 1921. Mr. Barney Zirinsky, who represents Sarah Zirinsky, lives at No. 392 Bushwick Avenue, Brooklyn. * * *"

It is too much of a demand upon our credulity to ask us to believe that the instructions to the auctioneer, these letters and the terms of sale were made and given without the authority of the Transit Commission. No one says so except the attorney by way of argument. There is no such testimony. We are justified, therefore, in taking this whole transaction as it appears without attempting to give it a strained and artificial construction.

As to this 291 square foot easement, part 1, the plaintiff got a fee subject to an easement for railroad purposes. Part of it was in actual use, part was leased out for profit. The city's easement for transit purposes will enable it to use the property for such purpose when reasonably necessary, but until then it has no right to the property.

*Las-Daub Realty Corp* v. *Fain* (214 App. Div. 8) does not pass upon this question or the rights in this property. In so far, however, as it holds that the plaintiff's predecessor did not take a fee subject to these easements we do not approve it.

The judgments below should be reversed and judgment directed for the plaintiff in accordance with this opinion, with costs in all courts.

O'Brien, J. (dissenting). The deed recites that this real property, " except the permanent and perpetual easement and right-of-way therein, hereinafter described," has become unnecessary for rapid transit railroad purposes and that the Transit Commission had sold the property " subject to said easement and right-of-way." This instrument of conveyance then grants and releases to the vendee all the parcel, " subject to said easement and right-of-way herein " together with all the appurtenances and all the estates, right, title and interest of the city in and to said premises " except said permanent and perpetual easement and right-of-way hereby reserved and retained." The deed then describes the easement which was reserved and retained as divided into three parts. Part 1 is described as having a horizontal area of 291 square feet. The finding of fact that the 22 square feet which is the subject of this action is included within the 291 square feet which constitutes part 1 of the easement has been unanimously affirmed, is fully supported by the evidence and is conceded by appellant to be correct. The parties agree in their deed that " the above described easement " shall not prevent the grantee from utilizing any part of it below the subway or structure not occupied by the subway or structure or any of its supports. That part of the easement which is described as part 1 and which is the only part involved in this litigation begins on a level with the street curb and, extending vertically upward for a distance of ten feet, comprises a cube. It is situated wholly above the subway and its structure and consequently, by the terms of the deed, is excluded from utilization by the grantee. The complaint demands judgment declaring that plaintiff is the owner in fee of all the premises, subject only to an easement for the maintenance and operation of the subway structure and its support. So long as the deed remains in its present form, no such relief can be accorded. It expressly reserves and retains title in the city to all of the easement

described as part 1, *excepts* it from the grant and, since it is situated above the subway, denies its use and occupation to the grantee. The deed constitutes a conveyance with an exception, which exception includes the cubic area designated as part 1. That part was reserved and retained. By no reasonable interpretation can the deed, in its present form, be held to convey any part of this twenty-two square feet or to authorize its use or occupation by plaintiff at any time. There is nothing ambiguous in the language of this instrument and consequently there is no room for construction.

As alternative relief the complaint demands that the deed from the city to Sarah Zirinsky be reformed so that the twenty-two square feet included within the ground surface of part 1 of the easement be stricken therefrom or that the limitations upon its use be altered. Among the six parcels of Brooklyn real estate sold by the city at public auction on April 28, 1921, was this parcel at Flatbush and DeKalb avenues. On all the maps and documents relating to the auction sale it is designated as plot IV. On the day of sale Sarah Zirinsky's husband purchased these premises and executed a memorandum of sale of plot IV " referred to in the attached ' Terms of Sale,' " and on July 19, 1921, the city of New York, acting by the Transit Commission, conveyed these premises by deed to her. The trial court has found and the Appellate Division has unanimously affirmed the finding that the grantee Sarah Zirinsky and her assignor had full knowledge or should have had full knowledge of the contents of the deed, that the deed conforms with the memorandum of sale executed by Zirinsky with the attached terms of sale, that no fraud was practiced, no mutual mistake was made by the parties as to their intention concerning the deed or its contents and that it was not the intention of the parties to the sale that the purchaser and his assigns should have the right to occupy and use or should acquire title to that portion of part 1

which is the subject of this litigation. If any evidence supports these findings, this judgment must be affirmed.

Much evidence supports the findings. The interest which is vested in plaintiff through mesne conveyances from Sarah Zirinsky is no greater than the title acquired by her. The terms of sale, which are incorporated in the memorandum of sale executed by Mrs. Zirinsky's husband and assignor, apply to all six plots which were auctioned on the same day. These terms include many general directions applicable to all the plots and several specific items relating to particular plots. The document notifies prospective bidders that the properties will be sold in fee simple clear of all incumbrances " *except* certain permanent and perpetual easements to be reserved and retained for the maintenance and operation in perpetuity of the structures of the rapid transit subway railroads as they now exist free of interference or right of interference. * * * In the case of Plot IV the subway structures may be altered with respect to the location of the present entrance facilities, providing such entrance facilities are not reduced in capacity or their safety impaired, and provided the approval of the chief engineer is secured as aforesaid." The notice warns bidders that it is expressly understood that they have examined the several plots and made sufficient study of the maps or plans prepared in the office of the Transit Construction Commissioner to determine for themselves " the nature and extent of the easements to be retained for the purposes of the said rapid transit subway railroads * * *. Intending bidders will be given every facility for examining the properties and plans or maps will be furnished at the office of the Transit Construction Commissioner, Room 603, No. 49 Lafayette Street, New York city, showing the nature and extent of the permanent easements to be retained by the city for rapid transit purposes * * *."

The terms of sale do not in any way refer to areas available for stands in plot IV. Such reference is in the auction

notice. The official map (Plaintiff's Exhibit 1-A) plainly shows part 1 easement as embracing 291 square feet, none of which is situate within the sidewalk area, and the photograph of the building then existing on plot IV demonstrates that the statement in the auction notice in respect to availability for stands is not misleading. Several small shops at the street level, *outside the area of part 1 easement*, were then occupied as florist and fruit booths or stands. The notice read by the auctioneer to the effect that news stands, which he said were observable in large part on the sidewalk, were to be available for renting purposes to the purchaser of plot IV, does not warrant an implication that any of such stands were then located or would be allowed to be located within the area designated as part 1. The plan on file with the Commission shows that the sidewalk is outside that area. The following statement in the notice read by the auctioneer might perhaps afford plaintiff some consolation if Zirinsky, the purchaser, had relied upon it or even heard it or, having heard it, if he had attached any importance to it. It reads: " * * * the easements as delimited on such drawings will not prevent the purchaser from utilizing any parts of the easement areas not actually occupied by the subway or structure or any of its supports * * *." Zirinsky cannot remember having heard the auctioneer read such a statement, and the trial judge, after hearing all the evidence, expressed his belief that Zirinsky did not rely upon anything that the auctioneer said that would mislead him. Zirinsky remembers that the auctioneer read the terms of sale and that he made the usual " boosting " remarks of an auctioneer. He said that he relied mainly on the information which he received from the real estate clerk and other clerks in the office of the Commission and that he thinks he never read the figures on plaintiff's Exhibit 3, a map upon which plaintiff strongly relies. He further testified: " Now I never figured this. All I figured was

64 feet long, take off 14 feet off that, leave 50 feet, and I figured $1,000 a foot." The property was purchased by him for $49,300. The trial judge's inference of fact is fully justified when, in referring to and quoting Zirinsky's testimony in respect to the frontage, he remarked: " He had not thought of any easements, permanent or temporary, at all." Zirinsky was not misled, for apparently he did not care, and gave no attention to easements. He received the report of the title company, paid his money and he and his wife accepted the deed and turned it over to the title company. The title company certified to a fee in the property, " except the permanent and perpetual easements required for the maintenance and operation in perpetuity, free of interference and right of interference, of the Fourth Avenue Rapid Transit Railroad including the subway for structure and the station entrances thereof and upon such terms as will adequately safeguard such maintenance and operation and such other terms and conditions as the Transit Commissioners duly deem necessary and proper." The trial judge refused to find any mutual mistake of fact or fraud or wrongful intent on the part of the city. On this record it is impossible to hold that there is no basis for the findings which were made. The most that can be said in plaintiff's favor is that there may have been an erroneous assumption of law by Zirinsky and by subordinates in the office of the Transit Commission.

There has been no practical construction in respect to the effect of this deed. Letters written by a subordinate clerk and signed by the secretary of the Transit Commission, prior to the execution and delivery of the deed, of course cannot bind the city. One need not be particularly credulous in order to believe, in the absence of proof to the contrary, that the Transit Commission, burdened as it was with responsibilities of magnitude, was unaware of the existence of letters relating to news stands written by one of its clerks. It was not within the authority of a

clerk or the secretary to construe the legal effect of transactions which later culminated and became merged in an unambiguous deed.

The judgment should be affirmed.

POUND, Ch. J., LEHMAN, HUBBS and CROUCH, JJ., concur with CRANE. J.; O'BRIEN, J., dissents in opinion; KELLOGG, J., not sitting.

Judgment accordingly.